680 So.2d 475 (1996)
DEPARTMENT OF REVENUE, Appellant,
v.
JOHN'S ISLAND CLUB, INC., Appellee.
No. 95-2652.
District Court of Appeal of Florida, First District.
March 27, 1996.
*476 Robert A. Butterworth, Attorney General, and James McAuley, Assistant Attorney General, Tallahassee, for Appellant.
Richard A. Lotspeich, John T. Lavia, III, and Fred McCormack, of Landers & Parsons, Tallahassee, for Appellee.
BARFIELD, Judge.
The Department of Revenue (DOR) appeals a final order determining Rule 12A-1.005(5)(d)1.b., Florida Administrative Code, to be an invalid exercise of delegated legislative authority. We affirm.
In 1949, the legislature first imposed a tax on "admissions." Prior to 1990, the definition of "admissions" included "all dues paid to private clubs providing recreational facilities." The definition of "admissions" was amended during the 1990 legislative session to include in the definition those "dues" of membership clubs providing physical fitness facilities. In 1991, the legislature again amended the definition of "admissions" by inserting "and fees." The definition, as amended, provided:
(1) The term "admissions" means and includes the net sum of money after deduction of any federal taxes for admitting a person or vehicle or persons to any place of amusement, sport, or recreation or for the privilege of entering or staying in any place of amusement, sport, or recreation, including, but not limited to, ... all dues and fees paid to private clubs and membership clubs providing recreational or physical fitness facilities....
Prior to the above change in substantive law, rule 12A-1.005(5) provided that dues paid to athletic clubs which provided recreational facilities were taxable. However, subparagraph (5)(c) of the rule also provided that:
(c) Capital contributions or assessments to an organization by its members are not taxable as charges for admissions when they are in the nature of payments made by the member of his or her share of capital costs, not charges for admission to use the organization's recreational or physical fitness facilities or equipment, and when they are clearly shown as capital contributions on the organization's records. Contributions and assessments will be considered taxable when their payment results in a decrease in periodic dues or user fees required of the payor to use the organization's recreational or physical fitness facilities or equipment.
After the substantive amendment to section 212.02(1), DOR adopted rule 12A-1.005(5)(d)1.b., which provides:
(d)1. Effective July 1, 1991, the following fees paid to private clubs or membership clubs as a condition precedent to, in conjunction with, or for the use of the club's recreational or physical fitness facilities are subject to tax.
. . . . .
b. Any periodic assessments (additional paid in capital) required to be paid by members of an equity or non equity club for capital improvements or other operating costs, unless the periodic assessment meets the criteria of a refundable deposit as provided in sub-subparagraph 2.e. below.
John's Island Club, Inc. (club) is a not-for-profit corporation which owns and operates a country club facility, providing recreational facilities to its members. Each member must purchase a membership. The cost of the membership is not subject to sales tax. A member who resigns is entitled to return of the greater of: (a) the initial amount paid or (b) 80% of the current membership cost. In addition to the membership charge, members pay annual dues. Beginning on July 1, 1994, the club made an assessment on each member to raise capital for the purpose of repairing and replacing many of its physical facilities. Any person joining the club after the imposition of the assessment would also be required to pay the assessment. The value of the contribution decreased in value 10% each year. If a member retained membership privileges for a period of ten years, the contribution had no redemptive value. A member who resigned earlier would receive a portion of the contribution in return. The *477 club paid sales tax on the contributions pursuant to rule 12A-1.005(5)(d)1.b.
The club filed a petition challenging the validity of rule 12A-1.005(5)(d)1.b. The club argued the rule exceeded DOR's grant of rulemaking authority, and modified, enlarged, and contravened the law implemented. DOR asserted that the rule implemented the legislative intent, specifically relying upon the terms "capitalization fees" and "capital facility fees" which are found in certain legislative history documents pertaining to the new legislation.
When reviewing a hearing officer's determination arising out of a section 120.56 quasi-judicial rule challenge proceeding, the appellate court's standard of review is whether the hearing officer's findings are supported by competent, substantial evidence. Adam Smith Enterprises, Inc. v. Department of Environmental Regulation, 553 So.2d 1260 (Fla. 1st DCA 1989). The hearing officer's findings in the present case are supported by competent, substantial evidence. We agree with the hearing officer that the rule is an invalid exercise of delegated legislative authority.
DOR correctly asserts that the legislative history supports the unmistakable intention of the legislature to prevent evasion of the tax imposed on dues. As noted by the hearing officer, a February 21, 1991, discussion of the Subcommittee on Sales Tax of the House Committee on Finance and Taxation indicated that the intent of the amendment was to close a loophole that allowed physical fitness facilities to change their pricing structure to charge a higher initiation fee, which was not taxable, and thereby reduce their monthly dues, which were taxable. The result was a reduction of revenue below that originally anticipated by the amendment taxing dues of physical fitness facilities.
DOR argues that the terms "capitalization fees" and "capital facility fees" are also used throughout the legislative history and that the hearing officer gave no effect to use of the terms. DOR emphasizes a discussion of the conference committee on finance and taxation which occurred on April 19, 1991. The entirety of the discussion of the committee on this issue is as follows:
Senator Jenne: Thegoing down to number 21, admissions, initiation fees. The House includes capitalization fees.
Representative Abrams: Which is this?
Mr. Weiss: The Senate bill just states initial fees are additionally included. The House bill, I believe, says that it's just all fees, which would include whether they called them initiation fees or capital facility fees or whatever.
Representative Abrams: Because we are using something other than initiation
Mr. Weiss: It's a fee that is going to be included.
Representative Abrams: Yes, they were usingthey were breaking down categories of fees to avoid the tax, I think is what the deal was there. That gets us how much?
Senator Jenne: Okay, well, it doesn't matter, because you can do it.
Representative Abrams: Okay, good.
As noted by the hearing officer, although the terms "capital facility fees" and "capitalization fees" were used during the discussion, it is far from clear that the intent of the amendment was to make taxable all capital contributions and assessments paid by members of private clubs providing recreational facilities. As noted above, the various discussions contained in the legislative history indicate the intent of the amendment was to close a loophole then used by physical fitness clubs who were renaming dues as fees in order to avoid taxes. There is no indication in the legislative history that the legislature intended to make taxable a completely different type of transaction which up until that point had been specifically excluded from taxation by rule.
We agree with the hearing officer that additional paid in capital does not fall within the generally understood definition of "dues" or "fees" as applied to a club. The terms "dues" and "fees" are not defined by statute, and the statute does not specifically authorize an admissions tax on any type of paid in capital. In the absence of clearer legislative consideration of what was meant by the terms "capitalization fees" and "capital facility *478 fees", we conclude the hearing officer correctly determined that the rule at issue was inconsistent with the provisions of chapter 212.
Not only does the absence of clear legislative intent inure to the benefit of the taxpayer, but the position of DOR is contrary to accepted principles of accounting from which common understanding of terms such as "capitalization" may be derived as clearly disclosed in the record of these proceedings. Accordingly, the order on appeal is affirmed.
KAHN, J., concurs.
ALLEN, J., concurs in result with opinion.
ALLEN, Judge, concurring in result.
I agree with the result reached by the majority. I do so because of the generally understood meaning of the term "fees." Even if a strained interpretation of the term might arguably encompass the contributions to capital involved herein, I would be dissuaded from accepting such interpretation by the canons of statutory construction which counsel that a strained interpretation of a statute should not be adopted over a more reasonable interpretation, and that an ambiguous tax statute is to be construed in favor of the taxpayer.
I do not join in the majority's reliance upon tidbits of legislative history to discern "legislative intent." In my view, the law means what its text most appropriately conveys, and we should content ourselves with reading it rather than psychoanalyzing a few of the many who enacted it. See Bank One Chicago, N.A. v. Midwest Bank & Trust Co., 9 Fla.L.Weekly Fed. S362, S366, ___ U.S. ___, 116 S.Ct. 637, 133 L.Ed.2d 635 (U.S. Jan. 17, 1996) (Scalia, J., concurring in part); United States v. Public Util. Comm'n of Cal., 345 U.S. 295, 319, 73 S.Ct. 706, 719, 97 L.Ed. 1020 (1953) (Jackson, J., concurring).